UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| BROOKE LEBEAU,<br><br>              Plaintiff,<br><br>vs.<br><br>PROGRESSIVE NORTHERN<br>INSURANCE COMPANY,<br><br>              Defendant. | Civ. 12-5044<br><br>**BRIEF IN SUPPORT OF DEFENDANT<br>PROGRESSIVE NORTHERN<br>INSURANCE COMPANY'S MOTION<br>FOR PARTIAL SUMMARY JUDGMENT** |

Defendant Progressive Northern Insurance Company ("Progressive") submits this Brief in Support of its Motion for Partial Summary Judgment regarding Plaintiff Brooke Lebeau's ("Lebeau") claims of bad faith and punitive damages.  Progressive incorporates all matters on file herein, including Progressive's Statement of Material Facts, which is referenced as "SMF", followed by the paragraph number and Exhibit.

**Overview – South Dakota Authority re Bad Faith.**

The South Dakota Supreme Court first recognized a cause of action for insurance bad faith in *Champion v. U.S. Fidelity & Guaranty Company*, 399 N.W.2d 320 (S.D. 1987).  Since *Champion*, the two basic elements of bad faith have remained the same.  (1) The insurer had no reasonable basis for denying the benefit; and (2) that the insurer knew or recklessly disregarded that it had no such basis.  *Champion*, at 324.  *Dakota, Minnesota & E. R.R. Corp. v. Acuity*, 2009 SD 69, ¶ 17, 771 N.W.2d 623, 629.

The two-pronged test recited in *Champion* by the South Dakota Supreme Court was first formulated by the Wisconsin Supreme Court in *Anderson v. Continental Insurance Company*, 271 N.W.2d 368, 377 (Wis. 1978).  More recently, the Wisconsin Supreme Court cited a law review article on the history of bad faith:

As intended, plaintiff's ability to bring a separate tort action [of bad faith] has helped to curb abuse and unfair practices. Unfortunately, as quickly as bad-faith law developed to come to the aid of the disadvantaged party in a contract or fiduciary relationship, it has **evolved into a litigation quandary that often misses its basic purpose** ... In some cases, **enterprising plaintiffs' attorneys seek out technical violations to bring a bad-faith action where there is no purposeful or malevolent will, or even a remotely unfair act. In legitimizing such claims, bad-faith law has lost its way.**

*Brethorst v. Allstate Property & Casualty Insurance Company*, 798 N.W.2d 467, 482 n. 6 (Wis. 2011), quoting Hector E. Schwartz & Christopher E. Appel, *Common-Sense Construction of Unfair Claims Settlement Statutes: Restoring the Good Faith in Bad Faith*, 58 Am. U.L. Rev. 1477, 1478 (2009).

Per the evidence cited in Progressive's Statement of Material Facts, Progressive had a reasonable basis to disagree with Lebeau and her attorney regarding the causation of Lebeau's claimed injures, and the monetary value of her claim.  The value of Lebeau's uninsured motorist (UM) claim is, and always has been, "fairly debatable".  *Hein v. Acuity*, 2007 SD 40, ¶ 10, 731 N.W.2d 231, 235 ("fairly debatable" analyzed further below.)  Similar to any third-party personal injury claim, only a jury will be able to determine the value of Lebeau's claim.  However, no facts exist to support Lebeau's bad faith allegation that 1) Progressive had **no reasonable basis** for declining Lebeau's settlement demands; **and** 2) that Progressive **recklessly disregarded** the basis of Lebeau's demands.  Without a basic showing of those two elements, Lebeau's bad faith claim fails as a matter of law.

The South Dakota Federal District Court recently granted partial summary judgment in a very similar case.  The Court recognized that the monetary value of a plaintiff's personal injury claim is subjective, and therefore, under many circumstances, fairly debatable.  *Anderson v. W. Nat. Mut. Ins. Co.*, 857 F. Supp. 2d 896. (D.S.D. 2012).  The facts of *Anderson* are very similar to the facts of Lebeau's claim.  The facts of the *Anderson* case are compared to the facts of Lebeau's claim below.

# FACTS

**1.    The Accident.**

This lawsuit arises out of a minor rear-end car accident.  The accident occurred on September 18, 2009, in Eagle Butte, South Dakota.  (SMF ¶ 1, Cheyenne River Sioux Tribe accident report, Ex. A.)  Lebeau agrees that the accident report completed by law enforcement accurately describes this accident. (SMF ¶ 2, Lebeau Depo. p. 33, Ex. B.)

Lebeau was stopped at the intersection of Highway 212 and D Street when a vehicle driven by Narcisse Bruguier ("Tortfeasor") bumped Lebeau's vehicle from the rear. (SMF ¶ 3, accident report, Ex. A.)  The airbags did not deploy in either vehicle, no part of Lebeau's body struck anything inside her vehicle, she did not have any visible injuries and there was no broken glass on either vehicle.  (SMF ¶ 4, Lebeau Depo. pp. 35-37, Ex. B.)

Per the accident report, the tortfeasor stated that he "barely tapped the rear of Lebeau's vehicle." (SMF ¶5, accident report, Ex. A.)  The investigating officer, Jody Charging Eagle, closely examined both vehicles but could not observe any damage to either vehicle. (SMF ¶ 6, accident report, Ex. A.)  At her deposition, Lebeau confirmed three post-accident photos of her vehicle, and described indentations from the tortfeasor's license plate on her back bumper, which are highlighted in pink on depo. Exhibit 3.  (SMF ¶ 7, vehicle photos from Lebeau Depo. marked as Exhibits 1-3.)

Lebeau complained of neck pain, but refused an ambulance or any medical attention at the scene. (SMF ¶ 8, accident report, Exhibit A.)

**2.    Lebeau's Treatment.**

Lebeau had a friend drive her to the ER at Indian Health Services ("IHS") in Eagle Butte. (SMF ¶ 9.)  Lebeau's main complaint was neck and back muscle strain.  The IHS treating physician noted past chiropractic care for neck pain following a slip and fall seven (7) months

prior to this car accident.  Her neck was tender, but had full range of motion.  Lebeau's diagnosis was acute neck strain and upper back muscle strain secondary to the MVA.  Lebeau was given a cervical collar and pain medication.  Her condition was stable upon discharge.  (SMF ¶ 10, IHS medical records, Bates Stamp ProgCL000141, Ex. C.)

Three days post-accident, Lebeau treated with Chiropractor Curt Kuehl.  (SMF ¶ 11, post-accident chiropractic records of Dr. Curt Kuehl, Bates Stamp ProgCL000064-68, Ex. D.) Lebeau had also treated with Dr. Kuehl for a slip and fall work injury seven (7) months **before** this car accident, including treatment for back and neck pain.  (SMF ¶ 12, pre-accident chiropractic records of Dr. Curt Kuehl, Bates Stamp ProgCL000060-62, Ex. E.)

Post-accident, Lebeau's major complaint was neck pain and headache.  Given the soft-tissue nature of the injury, Dr. Kuehl did not see any reason why Lebeau would not fully recover. (SMF ¶ 13, post-accident chiropractic records of Dr. Curt Kuehl, Bates Stamp ProgCL000064-68, Ex. D.)

On December 2, 2009, Dr. Kuehl opined that Lebeau had reached pre-injury status. Lebeau was discharged from Dr. Kuehl's care, who specifically noted "no follow-up care is recommended".  (SMF ¶ 14, post-accident chiropractic record of Dr. Curt Kuehl, Bates Stamp ProgCL000066, Ex. D.)

Despite the discharge by Dr. Keuhl, Lebeau sought treatment from Dr. Kuehl again on December 15, 2009.  Lebeau noted that her neck pain had not reoccurred and that her mid-back pain was mild.  Dr. Kuehl again noted that Lebeau had reached pre-injury status and was maintaining.  (SMF ¶ 15, post-accident chiropractic record of Dr. Curt Kuehl, Bates Stamp ProgCL000066, Ex. D.)  One month later (1/14/10), Lebeau presented to Dr. Kuehl requesting a neck x-ray.  Dr. Kuehl obliged and noted that the x-ray was essentially normal.  Dr. Kuehl's entry concludes "Once again no further care is recommended for her injuries received in Sept.

4

09." (SMF ¶ 16, post-accident chiropractic record of Dr. Curt Kuehl, Bates Stamp ProgCL000067, Ex. D.)  Although Dr. Kuehl was Lebeau's first post-accident medical provider (other than Lebeau's single post-accident IHS ER visit), given Dr. Kuehl's records, it is not surprising that Lebeau has not designated Dr. Kuehl as an expert witness for trial.

On June 3, 2010, six months after her last chiropractic treatment with Dr. Kuehl, Lebeau treated with Dr. Kuehl again for a "**new problem**, which was her mid back, insidious onset." (SMF ¶ 18, post-accident chiropractic record of Dr. Curt Kuehl, Bates Stamp ProgCL000068, Ex. D.) (Emphasis added.)

Despite Dr. Kuehl's December 2, 2009 diagnosis that Lebeau had reached "pre-injury status" and that "she's discharged from my care no follow up care recommended", on July 15, 2010, Lebeau began treating with Dr. Brandon Heck at Tri-County Chiropractic, and related neck, back pain and headaches to this September 2009 accident that is the subject of this litigation.  (SMF ¶ 19, chiropractic record of Dr. Brandon Heck, D.C., Bates Stamp ProgCL000077, Ex. F.)  Over the next two years, Lebeau attended over twenty chiropractic appointments for soft tissue injuries, her last appointment being October 12, 2012.  (SMF ¶ 20.) Despite Dr. Kuehl's December 2, 2009 diagnosis, Lebeau appears to be claiming that the Dr. Heck's treatment was for injuries caused by the September 2009 accident.

On June 6, 2013, Lebeau treated at IHS for complaints of sinus pressure/pain.  Lebeau also noted that she was in an accident in 2009 and that since then she has had neck problems. Lebeau requested an MRI.  The MRI showed normal soft tissues, vertebral body heights and disc spaces.  The MRI impression was a normal cervical spine.  (SMF ¶ 21, IHS "Imaging" report, June 6, 2013, Ex. G.)

3.      **Insurance Coverage.**

Lebeau alleges that the tortfeasor was an uninsured motorist at the time of the accident (SMF ¶ 22, Complaint, ¶ 2), and Progressive does not dispute that allegation.  The Progressive policy insuring Lebeau's vehicle provided $25,000 in UM coverage.  (SMF ¶ 23, Declarations Page (Note – policy holder – James Berndt, who purchased the policy for Lebeau), Bates Stamp ProgCL 000001-02, Ex. H).  The policy did not provide medical payments coverage.  (SMF ¶ 24, Declarations Page, Bates Stamp ProgCL 000001-02, Ex. H; Lebeau Depo. p. 64-65, Ex. B.)  Despite the lack of medical payments coverage for this policy, Lebeau has alleged that Progressive has acted in bad faith by withholding "MPC (medical payment coverage) benefits".  (SMF ¶ 25, Complaint, ¶ ¶ 19 and 26.)

Under the terms of the UM coverage, Progressive promised to pay Lebeau for "damages…which [LeBeau] is legally entitled to recover from the owner or operator of an…uninsured motor vehicle because of bodily injury."  (SMF ¶ 26, Policy, p. 9, PART III-UNINSURED/UNDERINSURED MOTORIST COVERAGE, Bate Stamp ProgUW 000007, Ex. I.)  Progressive has never denied that the tortfeasor was at fault for causing the accident.  (SMF ¶ 27, LeBeau Depo. p. 73, Ex. B.)  Progressive has also never denied that the tortfeasor was an uninsured motorist, or that UM coverage of up to $25,000 was available to Lebeau if a finder of fact determined that Lebeau incurred that amount of damages. (SMF ¶ 28.)

4.      **Progressive's Handling of Lebeau's UM claim.**

Immediately upon receiving notice of the accident on September 21, 2009, Progressive made contact with Lebeau.  Lebeau advised Progressive that the tortfeasor's insurance information had expired, and Lebeau was waiting to see if the tortfeasor had any valid insurance coverage.  (SMF ¶ 29, Claim Notes, Bates Stamp ProgCL000208, Ex. J.)  Progressive advised Lebeau that it would do the same, and that if tortfeasor did not have coverage, Progressive would

open a UM claim for Lebeau.  Lebeau agreed with this plan.  (SMF ¶ 30, Claim Notes, Bates Stamp ProgCL000208, Ex. J.)  After numerous phone calls and messages, Progressive confirmed that the tortfeasor did not have insurance coverage at the time of the accident.  (SMF ¶ 31, Claim Notes, Bates Stamp ProgCL000209, Ex. J.)

On September 30, 2009, (less than two weeks after the accident) Progressive opened a UM claim and assigned Progressive representative Lorie Rear ("Rear") to handle the claim. (SMF ¶ 32, Claim Notes, Bates Stamp ProgCL000210-211, Ex. J.)  Rear immediately contacted Lebeau, took her recorded statement and set up a time to personally meet with Lebeau to discuss the accident and Lebeau's injuries.  (SMF ¶ 33, Claim Notes, Bates Stamp ProgCL000211, Ex. J.)

Rear traveled to Eagle Butte and met Lebeau on October 7, 2009 to discuss the accident and Lebeau's injuries.  (SMF ¶ 34, Claim Notes, Bates Stamp ProgCL000214, Ex. J.)  Using medical authorizations signed by Lebeau during the October 7, 2009 meeting, Progressive also collected Lebeau's pre and post-accident medical records and bills (SMF ¶ 35, Claim Notes, Bates Stamp ProgCL000216, Ex. J.)

### 5.    Settlement Negotiations.

After the October 7, 2009, meeting with Lebeau, Progressive evaluated Lebeau's UM claim, continued to gather Lebeau's ongoing medical records, and worked with Lebeau in an attempt to settle her UM claim.  (SMF ¶ 36.) Despite the lack of physical damage to Lebeau's vehicle, despite medical records indicating an injury to the same area of her body (neck) just seven months prior to this accident, and despite Dr. Kuehl discharging Lebeau from treatment approximately three months post-accident, Progressive made a number of offers to Lebeau to cover her post-accident medical expenses and some additional general damages.  Lebeau rejected each of those offers. (SMF ¶ 37.)

On February 1, 2010 Lebeau advised Progressive that she had retained attorney Rebecca Kidder with the Abourezk Law Firm. (SMF ¶ 38, Claim Notes, Bates Stamp ProgCL000232-233, Ex. J.)  Twenty one (21) months later, Lebeau, via attorney Zephier of the Abourezk firm, made a settlement demand of $85,304.00.[1]  That demand included **$4,354.80** in past related medical expenses. (SMF ¶ 39, November 18, 2011 letter, Bates Stamp ProgCL000019-22, Ex. K.)

With the knowledge of additional medical expenses, two weeks later, on December 14, 2011, Progressive increased its offer to settle the UM claim to $6,650 (SMF ¶ 40, Claim Notes, Bates Stamp ProgCL000243, Ex. J.)  LeBeau responded six months later, May of 2012, and reduced her claim to the policy limits of $25,000.  (SMF ¶ 41, Claim Notes, Bates Stamp ProgCL000247, Ex. J.)  In a final good faith effort to settle the dispute, Progressive increased its offer to $9,000.  (SMF ¶ 42, Claim Notes, Bates Stamp ProgCL000247, Ex. J.)

From there, Lebeau sued Progressive alleging Breach of Contract (Count One); Bad Faith (Count Two); and Punitive Damages (Count Three).  (SMF ¶ 43, Complaint dated July 6, 2012.)

---

[1] Lebeau made the $85,304.00 demand despite the $25,000 UM limits available to Lebeau under the Progressive policy in which she sought coverage. Further, Lebeau's November 18, 2011 demand letter by her counsel also misrepresented that Lebeau "…has no prior medical history of problems with her back or with headaches…"  That statement is simply false.  Even a cursory review of Lebeau's pre-accident medical records reveal that Lebeau complained of back pain just months prior to this accident as a result of a slip and fall at work.  Further, as stated above, despite not purchasing Medical Payment Coverage ("MPC"), Lebeau has sued Progressive for failing to pay medical pay benefits. These are some simple illustrations of the hypocrisy of bad faith litigation. If Progressive were to make the same misrepresentations (intentional or not), Lebeau would certainly point to such misrepresentations as evidence of bad faith.  Yet Lebeau is allowed to make such misrepresentations, with impunity, and Progressive is forced to litigate its way out of bad faith allegations that have no evidentiary support.  Bad faith litigation appears to have reached a stage in which once the Plaintiff simply makes an allegation of bad faith (with no threshold evidentiary burden), the notion that **both** parties to a contract must act in good faith towards the other, is not something insurance carriers are able to rely upon.

<u>**ARGUMENT AND AUTHORITY**</u>

**1.      Summary Judgment Standard.**

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is not a genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  SDCL § 15-6-56(c); *Stern Oil Co., Inc. v. Brown*, 817 N.W.2d 395, 398 (S.D. 2012).  "'All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party.' " *Stern Oil Co, Inc.* at 398, quoting *Tolle v. Lev*, 804 N.W.2d 440, 444 (S.D. 2011).

"The party challenging summary judgment must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Id*.  "Summary judgment is proper if the moving party shows there are no genuine issues of material fact in dispute." *Cashman v. Van Dyke*, 815 N.W.2d 308, 311 (S.D. 2012), citing *Paradigm Hotel Mortgage Fund v. Sioux Falls Hotel Co.*, Inc., 511 N.W.2d 267 (S.D. 1994).  "'Entry of summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Rodriquez v. Miles*, 799 N.W.2d 722, 724-25 (S.D. 2011), quoting *Zephier v. Catholic Diocese of Sioux Falls*, 752 N.W.2d 658, 662 (S.D. 2008).  The party resisting summary judgment "cannot overcome a motion for summary judgment with mere general allegations and denials." *Toll v. Lev*, 804 N.W.2d 440, 446 (S.D. 2011), citing *Lawrence County v. Miller*, 786 N.W.2d 360, 367 (S.D. 2010).  Furthermore, when there are no genuine issues of material fact, summary judgment is looked upon favorably.  *Owens v. F.E.M. Electric Ass'n, Inc.*, 694 N.W.2d 274, 277 (S.D. 2005).

### 2.      Bad Faith – Generally.

Before a claim of bad faith is to be considered by a jury, Lebeau must show evidence that supports **both** "an absence of a reasonable basis for denial of policy benefits [or failure to comply with a duty under the insurance contract] **and** the knowledge or reckless disregard [of the lack] of a reasonable basis for denial…" *Dakota, Minnesota & E. R.R. Corp. v. Acuity*, 2009 SD 69, ¶ 17, 771 N.W.2d 623, 629 (emphasis added).

"First-party bad faith is an intentional tort and typically occurs when an insurance company consciously engages in wrongdoing during its processing or paying of policy benefits to its insured." *Hein v. Acuity*, 2007 SD 40, ¶ 10, 731 N.W.2d 231, 235 (citations omitted).  In claims for first-party benefits, "**the parties are adversaries, and therefore, an insurer is permitted to challenge claims that are fairly debatable**." *Id*. (emphasis added).  Only a frivolous or unfounded refusal to comply with a duty under an insurance contract will qualify as bad faith.  *Id*.  Since its first decision regarding bad faith in *Champion* (1987), the South Dakota Supreme Court has continually recognized an insurance company's right to challenge fairly debatable claims.  *See Dakota, Minnesota & E. R.R. Corp.* at ¶ 20.

### 3.      The Value of Lebeau's UM Claim is Fairly Debatable.

Progressive has never denied that Lebeau may be eligible for UM benefits.  Progressive simply disagrees with Lebeau – considering the low speed of the accident, the lack of physical damage to her vehicle, her prior injuries from a slip and fall at work, and her own chiropractor's records – that the value of her personal injury/UM claim equals $25,000, which was Lebeau's last demand.  The facts of the accident, Dr. Kuehl's chiropractic records regarding his treatment of Lebeau, Lebeau's medical expenses of less than $5,000 at the conclusion of Dr. Kuehl's treatment and opinion that Lebeau had reached pre-accident status, and Lebeau's pre-accident

back and neck injuries, justify Progressive's position – or at a minimum, render the value of Lebeau's claim fairly debatable.

In *Anderson v. W. Nat. Mut. Ins. Co.*, 857 F. Supp. 2d 896. (D.S.D. 2012), Plaintiff argued that Defendant "low-balled" him by offering him only $10,000 in UIM benefits. *Id.* at 906. The South Dakota District Court held that Plaintiff's UIM claim was fairly debatable, and granted partial summary judgment on Anderson's cause of action for bad faith. The facts of *Anderson* are very similar. (Although the *Anderson* accident appears to have been a much greater impact than Lebeau's accident, and the policy limits were greater in *Anderson*.)

> Anderson was not responsible for the motor vehicle accident and was injured. His **head struck and shattered the back window** of his pickup cab. He was **taken by ambulance to a hospital**, treated for neck and back strain, and released that day. He underwent extensive chiropractic care and then physical therapy for neck, back, and shoulder issues and headaches. He has not undergone medical treatment for any injury related to the injuries from the motor vehicle accident since March of 2008, although he does some physical therapy exercises in his home. His total medical bills related to the motor vehicle accident were $20,721.63. He reports ongoing pain and limitations from his injuries. No physician has assigned a permanent impairment rating to Anderson nor concluded that his injuries are permanent, although they may be. Anderson had a prior history of treatments for neck and back issues. Anderson has a vocational expert who opines that Anderson's income has declined a minimum of $28,000 per year. A Sioux Falls CPA evaluated Anderson's tax returns and questioned the validity of the loss of earnings claim. Western National hired Deibert, an experienced and capable outside-counsel from South Dakota, to evaluate Anderson's claim. Deibert advised Western National that, based on his experience and review of the file, the claim was likely not worth more than the $100,000 threshold of the UIM coverage.
>
> Anderson's claim, based on these facts not subject to genuine dispute, might be worth more than the $100,000 threshold of UIM coverage, or it might not. In short, the question of whether the value of the claim exceeds $100,000 is fairly debatable.
>
> *Id.* at 905-906. (Emphasis added.)

The facts that made the *Anderson* claim fairly debatable are the same facts that make Lebeau's claim fairly debatable. Those facts can be summarized as follows:

- Progressive acknowledged from the outset that Lebeau was not at fault for causing this accident.

- Progressive recognized – as evidenced by settlement offers for UM benefits – that UM coverage is available to Lebeau.

- The accident report ("I closely examined both vehicles but I did not see any visible damage…" ), and the photo of Lebeau's back bumper depict a minor collision.

- Lebeau began treatment with her regular chiropractor (Dr. Keuhl), who she had been treating with for neck and back pain prior to this accident.

- Dr. Kuehl, declared Lebeau to be back at her pre-accident condition –twice- in December 2009, approximately three months post-accident. (SMF ¶ 14, post-accident chiropractic record of Dr. Curt Kuehl, Bates Stamp ProgCL000066, Ex. D.)

- Per her own demand letter, Lebeau's claimed post-accident medical treatment expenses at the time Dr. Kuehl discharged her from treatment (in December 2009) was **$4,354.80.** (SMF ¶ 39, November 18, 2011 letter, Bates Stamp ProgCL000019-22, Ex. K.)

Only a jury will be able to determine the value of Lebeau's personal injury claim.  The question for this Partial Summary Judgment Motion is not which party is correct about the value of Lebeau's claim.  Rather, the question is – based upon these facts, and under these policy limits parameters – is the value of Lebeau's claim fairly debatable?  The common sense answer to that question – as the *Anderson* Court concluded – is yes, of course Lebeau's claim is fairly debatable.   The only way Lebeau can avoid partial summary judgment on the issue of bad faith is if the Court determines that the evidence supports findings of **both** unreasonableness, and

12

recklessness, when Progressive concluded a jury could possibly value Lebeau's personal injury

claim at less than the $25,000 policy limits available to her.  There is no evidence to support

claims of either unreasonableness or recklessness by Progressive when investigating or

evaluating Lebeau's claim.

> If an insured's claim is fairly debatable either in fact or law, an insurer cannot be
> said to have denied the claim in bad faith. The fact that the insurer's position is
> ultimately found to lack merit is not sufficient by itself to establish that the insurer
> had a reasonable basis to deny the claim. **The focus is on the existence of a
> debatable issue, not on which party was correct.**

*Dakota, Minnesota & E. R.R. Corp. v. Acuity*, 2009 SD 69, ¶ 20, 771 N.W.2d 623, 630

(citing 46A C.J.S. *Insurance* § 1873 (2008) (emphasis added)).

### 4.      Reasonableness of Progressive's Investigation.

Based upon the discovery conducted to date, Progressive anticipates Lebeau may attempt

to keep her bad faith cause of action alive by arguing that Progressive's **investigation** of

Lebeau's UM claim was insufficient.

Progressive's investigation of Lebeau's UM claim was extensive, and is well documented

in the Progressive claims notes cited above, all of which were produced to Lebeau at the outset

of discovery.  Progressive was timely and responsive to Lebeau and her counsel, even when

Lebeau's counsel was not.  Progressive gathered the accident report, all available photographs,

Lebeau's pre and post-accident medical records, interviewed Lebeau, and had multiple,

experienced claims personnel review the information and discuss the value of Lebeau's UM

claim.  Considering that Lebeau's UM claim stems from a minor impact car accident, and that

fault for causing the accident was never in dispute, Progressive's investigation was extensive.

Picking at some aspect of the Progressive's investigation (even with the benefit of

hindsight) is not enough by itself to sustain a cause of action for bad faith.  The Plaintiff in the

*Anderson* case attempted the "imperfect investigation" strategy, which was rejected by the South Dakota Federal District Court.

> Here, Western National did not contest that an accident occurred, that Anderson was injured in the accident, and that Anderson was blameless for the accident. Western National did an investigation. Western National did not interview Anderson, but Anderson was represented by counsel who requested that Western National direct all communications to Anderson through Anderson's counsel. As this Court has explained, whether the value of Anderson's claim exceeds $100,000 is fairly debatable under the undisputed material facts. Western National's investigation and handling of this case makes the case distinct from *Dakota, Minn. & E.R.R. Corp. Cf.,  See Merriam v. Nat'l Union Fire Ins. Co. of Pittsburgh. Pa.,* 572 F.3d 579, 586 (8th Cir.2009) (applying Iowa law and explaining that "an improper investigation cannot alone sustain a tort action for bad faith if the insurer had an objectively reasonable basis for denying the insured's claim."); *Reid v. Pekin Ins. Co.,* 436 F.Supp.2d 1002, 1012–13 (N.D.Iowa 2006) (plaintiff's contention that insurer's experts conducted imperfect investigation did not preclude a grant of summary judgment on plaintiff's bad faith claim where opinions from other experts made claim fairly debatable); *Lerette v. Am. Med. Sec., Inc.,* 270 Neb. 545, 705 N.W.2d 41, 49–50 (2005) (insured's bad faith claim failed as a matter of law because insurer had an arguable basis on which to deny insured's claim); *State Farm Mut. Auto. Ins. Co. v. Smith,* 956 So.2d 1164, 1167 (Ala.Civ.App.2006) (insurer did not commit bad faith by failing to investigate insured's UIM claim where insurer carefully considered insured's medical records and "had a legitimate reason to dispute the extent of [the insured's damages resulting from the accident].").

*Anderson*, 857 F. Supp. 2d 896, at 907.

## CONCLUSION

In the context of a first party claim, insureds and insurers are adversaries, which gives insurers the ability to contest fairly debatable claims.  For purposes of this Partial Summary Judgment Motion, the question is not which party's monetary evaluation is correct (or closest to correct). The question is whether a debatable issue exists.

Considering no visible damage to the vehicles at scene, that Lebeau had neck and back injuries just prior to the collision, that her own treating chiropractor opined that she was back to pre-accident status three months post-accident (with medical expenses at the time of $4,354.80), Lebeau cannot make a straight faced argument that a jury would never award her less than

$25,000.  In the end, as stated by *Anderson* court, Lebeau's claim may be worth more than the $25,000 UM limits available to her, or it may not.  But there is no legitimate dispute that the value of the claim is fairly debatable.

Progressive respectfully requests that this Court grant its Motion for Partial Summary Judgment, dismissing Lebeau's claims for bad faith and punitive damages.

Dated this 30th day of June, 2014.

MAY & JOHNSON, P.C.


By_____/s/ Mark J. Arndt_____
        Mark J. Arndt
6805 South Minnesota Avenue
P.O. Box 88738
Sioux Falls, SD  57109-8738
(605) 336-2565; Fax:  (605) 336-2604
Attorneys for Defendant

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing **Brief In Support of Defendant Progressive Northern Insurance Company's Motion for Partial Summary Judgment** has been filed electronically with the Clerk of Court through ECF on the following:

Robin L. Zephier
Abourezk & Zephier, P.C.
P.O. Box 9460
Rapid City, SD  57709
Attorney for Plaintiff


                    ____/s/ Mark J. Arndt_____
                         Mark J. Arndt