UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| BROOKE LEBEAU,<br><br>            Plaintiff,<br><br>vs.<br><br>PROGRESSIVE NORTHERN<br>INSURANCE COMPANY,<br><br>            Defendant. | Civ. 12-5044<br><br>**STATEMENT OF MATERIAL FACTS IN<br>SUPPORT OF DEFENDANT<br>PROGRESSIVE NORTHERN<br>INSURANCE COMPANY'S MOTION<br>FOR PARTIAL SUMMARY JUDGMENT** |

Defendant Progressive Northern Insurance Company ("Progressive") submits this Statement of Material Facts in Support of its Motion for Partial Summary Judgment.

**The Accident**

1.      This accident occurred on September 18, 2009, in Eagle Butte, South Dakota. (Cheyenne River Sioux Tribe accident report, Ex. A.)

2.      Lebeau agrees that the accident report completed by law enforcement accurately describes this accident. (Lebeau Depo. p. 33, Ex. B.)

3.      Lebeau was stopped at the intersection of Highway 212 and D Street when a vehicle driven by Narcisse Bruguier ("Tortfeasor") bumped Lebeau's vehicle from the rear. (Accident report, Ex. A.)

4.      The airbags did not deploy in either vehicle, no part of Lebeau's body struck anything inside her vehicle, Lebeau did not have any visible injuries and there was no broken glass on either vehicle.  (Lebeau Depo. pp. 35-37, Ex. B.)

5.      Per the accident report, the Tortfeasor stated that he "barely tapped the rear of Lebeau's vehicle." (Accident report, Ex. A.)

6.     The investigating officer, Jody Charging Eagle, closely examined both vehicles, but could not observe any damage to either vehicle. (Accident report, Ex. A.)

7.     At her deposition, Lebeau confirmed three post-accident photos of her vehicle, and described indentations from the tortfeasor's license plate on her back bumper, which are highlighted in pink on depo. Exhibit 3.  (Vehicle photos from Lebeau Depo. marked as Exhibits 1-3.)

8.     Lebeau complained of neck pain, but refused an ambulance or any medical attention at the scene. (Accident report, Ex. A.)

**Lebeau's Treatment**

9.     Lebeau had a friend drive her to the ER at Indian Health Services ("IHS") in Eagle Butte.

10.     At the ER, Lebeau's main complaint was neck and back muscle strain.  The IHS treating physician noted past chiropractic care for neck pain following a slip and fall seven (7) months prior to this car accident.  Lebeau's neck was tender, but had full range of motion. Lebeau's diagnosis was acute neck strain and upper back muscle strain secondary to the MVA. Lebeau was given a cervical collar and pain medication.  Her condition was stable upon discharge.  (IHS medical records, Bates Stamp ProgCL000141, Ex. C.)

11.     Three days post-accident, Lebeau treated with Chiropractor Curt Kuehl. (Post-accident chiropractic records of Dr. Curt Kuehl, Bates Stamp ProgCL000064-68, Ex. D.)

12.     Lebeau had also treated with Dr. Kuehl for a slip and fall work injury seven (7) months **before** this car accident, including treatment for back and neck pain. (Pre-accident chiropractic records of Dr. Curt Kuehl, Bates Stamp ProgCL000060-62, Ex. E.)

13.     Post-accident, Lebeau's major complaint was neck pain and headache.  Given the soft-tissue nature of the injury, Dr. Kuehl did not see any reason why Lebeau would not fully

recover.  (Post-accident chiropractic records of Dr. Curt Kuehl, Bates Stamp ProgCL000064-68, Ex. D.)

14.     On December 2, 2009, Dr. Kuehl opined that Lebeau had reached pre-injury status.  Lebeau was discharged from Dr. Kuehl's care, who specifically noted "no follow-up care is recommended".  (Post-accident chiropractic record of Dr. Curt Kuehl, Bates Stamp ProgCL000066, Ex. D.)

15.     Despite the discharge by Dr. Kuehl, Lebeau sought treatment from Dr. Kuehl again on December 15, 2009.  Lebeau noted that her neck pain had not reoccurred and that her mid-back pain was mild.  Dr. Kuehl again noted that Lebeau had reached pre-injury status and was maintaining.  (Post-accident chiropractic record of Dr. Curt Kuehl, Bates Stamp ProgCL000066, Ex. D.)

16.     A one month later (1/14/10), Lebeau presented to Dr. Kuehl requesting a neck x-ray.  Dr. Kuehl obliged and noted that the x-ray was essentially normal.  Dr. Kuehl's entry concludes "Once again no further care is recommended for her injuries received in Sept. 09." (Post-accident chiropractic record of Dr. Curt Kuehl, Bates Stamp ProgCL000067, Ex. D.)

17.     Although Dr. Kuehl was Lebeau's first post-accident medical provider (other than Lebeau's single post-accident IHS ER visit), Lebeau has not designated Dr. Kuehl as an expert witness for trial.

18.     On June 3, 2010, six months after her last chiropractic treatment with Dr. Kuehl, Lebeau treated with Dr. Kuehl again for a "**new problem**, which was her mid back, insidious onset."  (Post-accident chiropractic record of Dr. Curt Kuehl, Bates Stamp ProgCL000068, Ex. D.) (Emphasis added.)

19.     Despite Dr. Kuehl's December 2, 2009 diagnosis that Lebeau had reached "pre-injury status" and that "she's discharged from my care no follow up care recommended", on July

15, 2010, Lebeau began treating with Dr. Brandon Heck at Tri-County Chiropractic, and related

neck, back pain and headaches to this September 2009 accident that is the subject of this

litigation.  (Chiropractic record of Dr. Brandon Heck, D.C., Bates Stamp ProgCL000077, Ex. F.)

20.     Over the next two years, Lebeau attended over twenty chiropractic appointments

for soft tissue injuries, her last appointment being October 12, 2012.

21.     On June 6, 2013, Lebeau treated at IHS for complaints of sinus pressure/pain.

Lebeau also noted that she was in an accident in 2009 and that since then she has had neck

problems. Lebeau requested an MRI.  The MRI showed normal soft tissues, vertebral body

heights and disc spaces.  The MRI impression was a normal cervical spine.  (IHS "Imaging"

report, June 6, 2013, Ex. G.)

**Insurance Coverage**

22.     Lebeau alleges that the Tortfeasor was an uninsured motorist at the time of the

accident (Complaint, ¶ 2), and Progressive does not dispute that allegation.

23.     The Progressive policy insuring Lebeau's vehicle provided $25,000 in UM

coverage.  (Declarations Page (Note – policy holder – James Berndt, who purchased the policy

for Lebeau), Bates Stamp ProgCL 000001-02, Ex. H).

24.     The policy did not provide medical payments coverage.  (Declarations Page,

Bates Stamp ProgCL 000001-02, Ex. H; Lebeau Depo. p. 64-65, Ex. B.)

25.     Despite the lack of medical payments coverage for this policy, Lebeau has alleged

that Progressive has acted in bad faith by withholding "MPC (medical payment coverage)

benefits".  (Complaint, ¶ ¶ 19, 26.)

26.     Under the terms of the UM coverage, Progressive promised to pay Lebeau for

"damages…which [Lebeau] is legally entitled to recover from the owner or operator of

an…uninsured motor vehicle because of bodily injury."  (Policy, p. 9, PART III-

UNINSURED/UNDERINSURED MOTORIST COVERAGE, Bate Stamp ProgUW 000007, Ex. I.)

27.     Progressive has never denied that the Tortfeasor was at fault for causing the accident.  (Lebeau Depo. p. 73, Ex. B.)

28.     Progressive has also never denied that the Tortfeasor was an uninsured motorist, or that UM coverage of up to $25,000 was available to Lebeau if a finder of fact determined that Lebeau incurred that amount of damages.

**Progressive's Handling of Lebeau's UM claim.**

29.     Immediately upon receiving notice of the accident on September 21, 2009, Progressive made contact with Lebeau.  Lebeau advised Progressive that the tortfeasor's insurance information had expired, and Lebeau was waiting to see if the Tortfeasor had any valid insurance coverage.  (Claim Notes, Bates Stamp ProgCL000208, Ex. J.)

30.     Progressive advised Lebeau that it would do the same, and that if Tortfeasor did not have coverage, Progressive would open a UM claim for Lebeau.  Lebeau agreed with this plan.  (Claim Notes, Bates Stamp ProgCL000208, Ex. J.)

31.     After numerous phone calls and messages, Progressive confirmed that the Tortfeasor did not have insurance coverage at the time of the accident.  (Claim Notes, Bates Stamp ProgCL000209, Ex. J.)

32.     On September 30, 2009, (less than two weeks after the accident) Progressive opened a UM claim and assigned Progressive representative Lorie Rear ("Rear") to handle the claim.  (Claim Notes, Bates Stamp ProgCL000210-211, Ex. J.)

33.     Rear immediately contacted Lebeau, took her recorded statement and set up a time to personally meet with Lebeau to discuss the accident and Lebeau's injuries.  (Claim Notes, Bates Stamp ProgCL000211, Ex. J.)

34.     Rear traveled to Eagle Butte and met Lebeau on October 7, 2009 to discuss the accident and Lebeau's injuries.  (Claim Notes, Bates Stamp ProgCL000214, Ex. J.)

35.     Using medical authorizations signed by Lebeau during the October 7, 2009 meeting, Progressive also collected Lebeau's pre and post-accident medical records and bills (Claim Notes, Bates Stamp ProgCL000216, Ex. J.)

**Settlement Negotiations**

36.     After the October 7, 2009, meeting with Lebeau, Progressive evaluated Lebeau's UM claim, continued to gather Lebeau's ongoing medical records, and worked with Lebeau in an attempt to settle her UM claim.

37.     Despite the lack of physical damage to Lebeau's vehicle, despite medical records indicating an injury to the same area of her body (neck) just seven months prior to this accident, and despite Dr. Kuehl discharging Lebeau from treatment approximately three months post-accident, Progressive made a number of offers to Lebeau to cover her post-accident medical expenses and some additional general damages.  Lebeau rejected each of those offers.

38.     On February 1, 2010 Lebeau advised Progressive that she had retained attorney Rebecca Kidder with the Abourezk Law Firm. (Claim Notes, Bates Stamp ProgCL000233, Ex. J.)

39.     Twenty one (21) months later, Lebeau, via attorney Zephier of the Abourezk firm, made a settlement demand of $85,304.00.  That demand included **$4,354.80** in past related medical expenses. (November 18, 2011 letter, Bates Stamp ProgCL000019-22, Ex. K.)

40.     With the knowledge of additional medical expenses, two weeks later, on December 14, 2011, Progressive increased its offer to settle the UM claim to $6,650 (Claim Notes, Bates Stamp ProgCL000243, Ex. J.)

41.     Lebeau responded six months later, May of 2012, and reduced her claim to the policy limits of $25,000.  (Claim Notes, Bates Stamp ProgCL000247, Ex. J.)

42.     In a final good faith effort to settle the dispute, Progressive increased its offer to $9,000.  (Claim Notes, Bates Stamp ProgCL000247, Ex. J.)

43.     From there, Lebeau sued Progressive alleging Breach of Contract (Count One); Bad Faith (Count Two); and Punitive Damages (Count Three).  (Complaint dated July 6, 2012.)

Dated this 30th day of June, 2014.

MAY & JOHNSON, P.C.


By _____/s/ Mark J. Arndt_____
        Mark J. Arndt
        6805 South Minnesota Avenue, P.O. Box 88738
        Sioux Falls, SD  57109-8738
        (605) 336-2565; Fax:  (605) 336-2604
        Attorneys for Defendant

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing **Statement of Material Facts in Support of Defendant Progressive Northern Insurance Company's Motion for Partial Summary Judgment** has been filed electronically with the Clerk of Court through ECF on the following:

Robin L. Zephier
Abourezk & Zephier, P.C.
P.O. Box 9460
Rapid City, SD  57709
Attorney for Plaintiff


        _____/s/ Mark J. Arndt_____
                Mark J. Arndt