UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

Civ. No. 12-5044 JLV____

_____

| | | |
|---|---|---|
| BROOKE LEBEAU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **PLAINTIFF'S BRIEF IN RESPONSE** |
| | ) | **TO DEFENDANT'S MOTION FOR** |
| PROGRESSIVE NORTHERN | ) | **PARTIAL SUMMARY JUDGMENT** |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW the Plaintiff, Brooke Lebeau, by and through her attorney, Robin L.

Zephier, and hereby makes and files her Brief in Support of Plaintiff's Response in Objection to

Defendant's Motion for Summary Judgment. Plaintiff asserts that there are genuine issues of

material and disputed fact that exist to allow a trier of fact to make decisions on Defendant's bad

faith, breach of contract, and punitive damages claims, in denying the Plaintiff the first party

automobile insurance benefits under their own Progressive Northern Insurance Company policy

for Uninsured Motorist (UM) coverage. None of the first party UM benefits owed to Plaintiff

have been paid by Defendant to the present time.

**FACTS**

On September 18, 2009, Plaintiff Brooke LeBeau was stopped at a stop sign

waiting to make a left turn at the intersection of North D Street and US Highway 212 in Eagle

Butte, Dewey County, South Dakota.  While stopped, Plaintiff Brooke Lebeau was struck from

behind by an uninsured driver, Narcisse Brugier, whose foot allegedly slipped on the accelerator

1

as he was approaching Plaintiff Brooke Lebeau's vehicle.  The impact thrust Plaintiff's body forward, creating neck pain and causing injury to her back, neck, side and head.

Plaintiff sought and obtained medical care in Eagle Butte, South Dakota.   Only after the Plaintiff had actually incurred many of her medical expenses, the Defendant, the first party Uninsured Motorist (UM) Bodily Injury carrier Progressive Northern Insurance Company, made a purposeful decision to scrutinize, then deny, much of the medical expenses of the Plaintiff. This purposeful and planned conduct by Defendant's claims agents inflicted and caused additional harm to the Plaintiff.  (Lebeau depo. 65-85; Strzelec Report p. 1-20, (**Ex. 1**; Srzelec report 1-20).

The Plaintiff was insured with Defendant Progressive Northern for many years, under policy #No. 43547971-6 and according to the policy declarations page(s), had $25,000 per person per accident policy limits for Uninsured Motorist Coverage (UM).   At or near the date of loss, Progressive Northern was notified of the claims and the Plaintiff signed written authorizations to assist Defendant's claims agents in obtaining all of the relevant information, i.e. medical records and bills, for the Plaintiff.  The tortfeasor Brugier was uninsured.

During the first party claim process, Brooke Lebeau became increasingly aware how Progressive Northern was seeking to devalue, diminish or discredit her first party bodily injury claim.  However, when Progressive Northern and its claims agents made extremely minimal offers to settle the first party UM BI claim, despite the absolutely clear liability and no contradictory medical evidence adverse to Brooke's care and treatment, Lebeau realized that Progressive Northern was trying to save money on her claim, at her expense, and she felt that was not right and it caused her great physical and emotional anxiety.  (Lebeau depo. p. 65-85).

2

Plaintiff Brooke Lebeau sought out legal advice to learn more of her legal rights and remedies under the circumstances, the law, and her own insurance contract with Progressive Northern.

Lebeau obtained with legal counsel, many months after the September 18, 2009 motor vehicle accident as to handling of the first party claim.  However, Progressive sought to have Brooke Lebeau sign away all rights and remedies against Progressive and its entities forever and into the future, when Progressive referenced a blanket settlement release before Progressive would pay anything at all in first party UM benefits to its own insured Brooke Lebeau.  (Lebeau Dep. 65-85).   Plaintiff's counsel, then seeing that Brooke Lebeau's losses from the September 18, 2009 event, far exceeded the value of $25,000 and upward, submitted a claim for first party UM benefits under Plaintiff's first party policy with Progressive Northern.  Once the true significance of Brooke Lebeau's damages came to bear, a demand was made to Progressive Northern to settle the first party claim for the BI policy limits of $25,000 per person per accident. The actual demand made was in the amount of $85,304.40, which was obviously (to any cognizant reading) in excess of the $25,000 UM policy limits.

As a result of the discovery proceedings, Plaintiff makes specific reference to Defendant's Answers to Plaintiff's First Set of Requests for Admissions to Defendant dated May 17, 2013, (**Ex. 13**), here: Reference to Plaintiff's Statement of Undisputed Facts, shall be referred to as "PSF" following by the Statement #___).

## REQUESTS FOR ADMISSIONS

Please admit that each of the following statements is true:

1. That a motor vehicle accident occurred between Narcisse Brugier and Brook

3

Lebeau on September 18, 2009, on US Highway 212 in Eagle Butte, Dewey County, South

Dakota, where Narcisse Brugier rear ended Plaintiff's vehicle;

RESPONSE: Admit.

   2.  That Narcisse Brugier was negligent in the operation of the vehicle she was

driving at the time of the accident;

RESPONSE: Admit.

   3.  That Narcisse Brugier was driving a 2001 ford Mustang that belonged to

him, at the time of the accident;

RESPONSE: Admit that Narcisse Brugier was driving a 2001 Ford Mustang at the time of the

accident.

   4.  That Progressive Northern Insurance Company is a corporation and was a

corporation as of September 18, 2009;

RESPONSE: Admit.

   5.  That the Plaintiff Brooke Lebeau was driving a 2008 Chevrolet Equinox which

was insured under an automobile insurance policy by Progressive Northern Insurance Company

at the time of the accident;

RESPONSE: Admit.

   6.  That the personal automobile insurance policy number in effect at the time of the

accident was 43547971-6;

RESPONSE: Admit.

   7.  That Progressive Northern Insurance Company's policy of insurance on the

vehicle owned by Plaintiff Brooke Lebeau included uninsured motorist (UM) coverage, and

4

Medical Payments Coverage (MPC);

RESPONSE: Admit that policy #43547971-6 included UM coverage.  Deny that policy

#43547971-6 included MP coverages as MP coverage was rejected by the named insured James

P. Berndt.  See attached ProgCL 000250.

8.      That in return for Plaintiff's premium payment on insurance through Progressive

Northern Insurance Company, Plaintiff Brooke Lebeau was, and is covered for motor vehicle

accidents involving uninsured motorists for the September 18, 2009 accident;

RESPONSE: Admit that Policy #43547971-6 provided UM coverage for the September 18,

2009, accident, subject to the UM limits stated on the declarations page of the policy.

9.      That Plaintiff Brooke Lebeau has cooperated with Progressive Northern

Insurance Company in trying to resolve the UM claim;

RESPONSE: Admit to the extent that Plaintiff provided some information to assist Progressive

in their evaluation of Plaintiff's UM claim.  Deny to the extent that prior to the lawsuit,

Progressive made a fair settlement offer, which offer was rejected by this Plaintiff.  Progressive

recognizes that Plaintiff's claim for damages may be fairly debatable.

This Request is further denied to the extent that Plaintiff made, and continues to make,

claims for Medical Payment (MP) coverage, when such coverage was not purchased by the

policy holder, and therefore not available to the Plaintiff.  Plaintiff continues to make such claims

for MP coverage even after progressive has disclosed documentation (attached ProgCL000250)

that medical payment coverage was waived by the policy owner.

10.     That someone properly and promptly summoned the police to the accident on

September 18, 2009;

RESPONSE: Admit that there is a Calls for Service report completed by the Cheyenne River Sioux Tribe Police Department related to the 9/18/09, accident.  It is unknown to the Defendant what Plaintiff may consider to be "properly and promptly summoned the police.

11.     That Progressive Northern Insurance Company has denied Plaintiff Brooke Lebeau the uninsured motorist coverage she is entitled to under her policy;

RESPONSE: Denied.

12.     That Plaintiff Brooke Lebeau had a per person/per accident policy limit under her Uninsured Motorist (UM) coverage in the amount of $25,000.00 per person per accident and $50,000.00 per accident to cover the entirety of this claimed loss;

RESPONSE: Admit that the policy provided $25,000 per person and $50,000 per accident of UM coverage during the policy term.

13.     That as Plaintiff's MPC insurance carrier as of the date of the subject accident, Defendant owed and owes the costs of the medical care rendered as a result of the injuries Plaintiff received in the accident of September 18, 2009 up to the MPC policy limits;

RESPONSE: Deny that policy #43547971-6 included MP coverage as MP coverage was rejected by the named insured, James P. Berndt.  See attached ProgCL000250.

14.     That Progressive Northern Insurance Company and/or its parent and subsidiary companies authorized its agents to market, sell and deliver auto insurance coverage in Meade and Pennington County, South Dakota and to market and sell an automobile insurance policy, No. 43547971-6, to James P. Berndt in South Dakota;

RESPONSE: Admit.

15.     That reserves were set by the insuror on this loss on its first notice of said claim in

6

2009 or soon thereafter;

RESPONSE: Admit.

16.      That reserves were set on this case, and modified, as this claim progressed, up until the present time;

RESPONSE: Admit that Progressive set reserves due to Plaintiff's claim, and that reserves were modified after the time reserve were originally set.

17.      That Plaintiff Brooke Lebeau has not exhausted her first party MPC policy limits of $2,000.00;

RESPONSE: Deny that policy #43547971-6 included MP coverage as MP coverage was rejected by the named insured James P. Berndt.  See attached ProgCL000250.

18.      That Progressive and its parent and subsidiary companies, by and through its claims representatives, knew that Plaintiff Brooke Lebeau had suffered bodily injury as a result of the September 18, 2009 motor vehicle accident;

RESPONSE: Admit that Plaintiff claims to have sustained injuries as a result of the September 18, 2009, accident.  Plaintiff maintains the burden of proof regarding any injuries she actually incurred, and the extent of those alleged injuries.

19.      That Defendant owed UM policy benefits to Plaintiff Brooke Lebeau;

RESPONSE: Admit.  Progressive further states that UM policy benefits have offered by Progressive to Plaintiff.  Progressive recognizes that the value of such UM policy benefits are fairly debatable.

20.      That Defendant did withhold UM benefits from Plaintiff;

RESPONSE: Denied.

21.     That Defendant encourages its claims personnel to reduce and/or diminish the amount of money paid out to first party claimants for UM benefits;

RESPONSE: Denied.

22.     That Defendant encourages its claims personnel to reduce and/or diminish the amount of money paid out to first party claimants for auto policy property losses;

RESPONSE: Denied.

23.     That Defendant encourages its claims personnel to reduce and/or diminish the amount of money paid out to first party claimants for auto policy bodily injury losses;

RESPONSE: Denied.

24.     That Defendant has had a Gainsharing program and/or programs in place as of September 18, 2009;

RESPONSE: Admit.

25.     That Defendant owes a duty of good faith dealing to its insured, the Plaintiff Brooke Lebeau, in handling her first party claims resulting from the September 18, 2009 accident.

RESPONSE: Admit.

26.     That Defendant has breached its duty of good faith dealing to its insured, Plaintiff, in the handling of the UM claim from the September 18, 2009, accident;

RESPONSE: Denied.

27.     That Defendant has not hired or used any medical doctor or physician to perform an Independent Medical Examination upon the Plaintiff, Brooke Lebeau, at all, since the initiation of Plaintiff's UIM claim, and has not done so prior to July 6th, 2012;

RESPONSE: Deny that Plaintiff has initiated a UIM claim.  Progressive understands Plaintiff's

claim to be for UM benefits.

Admit that Progressive has not requested that Plaintiff submit to a physical independent medical

exam.

     30.     That Progressive does not disclose to policyholders at the point of sale of the

automobile insurance policies in South Dakota, that Progressive's claims personnel participate in

the Gainsharing Program;

RESPONSE: Admit.

## ARGUMENT

     This Court must view the evidence most favorably to the non-moving party, here the

Plaintiff,  and resolve all reasonable doubts against the moving party, here the Defendant.  Hunt

v. Cromartie, 526 U.S. 541, 550-51 (1999); Eastman Kodak Co. v. Image Technical Servs., Inc.,

504 U.S. 451, 456 (1992).

     As this Court knows, generally, federal courts are to apply federal law to procedural

matters and state law to substantive issues.  In this case, Plaintiff alleges Defendant has

committed bad faith, breach of contract, has withheld and continues to withhold first party UM

benefits from Defendant's own insured Plaintiff, even 5 years after the loss, without reasonably

and fairly disclosing in any fair or reasonable manner Progressive's unfair and unreasonable

claim handling practices to unsuspecting and innocent consumers/policyholders, including

Plaintiff here.

     If insurors like Progressive sell the 25/50 limits UM coverage without disclosing the fact

that the UM bodily injury benefits can and may be used to pay for unreimbursed accident related

medical expenses, for a loss in South Dakota, that conduct by the insuror and its agents, Plaintiff has asserted in good faith, that that conduct is wrongful, fraudulent, against public policy, unfair, unreasonable and is an alleged deceptive business practice reaping unearned premium gains for withholding payment of first party UM benefits.  Plaintiff further assert that this type of conduct is a breach of Defendant's fiduciary duty.  (Rear depo. p. __; PSF 4-33, 51-57).  This Court must apply the substantive law "of the state in which the acts complained of occurred."  Goodman v. United States, 2 F.3d 291, 292 (8th Cir. 1993).  Since the acts complained of took place in South Dakota, this state's substantive law is used to determine the duty of care the defendant owed to Plaintiff in this case.

## SUMMARY JUDGMENT STANDARD

_____Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ P. 56.  Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed 2d. 202 (1986).   Summary judgment is not appropriate if a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving part.  Id.

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L. Ed. 2d 265

(1986).  The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record.  Vette Co. v. Aetna Cas. & Sur. Co., 612 F.2d 1076, 1077 (8th Cir. 1980).

## THE CONTRACT

Plaintiff's insurance policy with Progressive Northern is a contract. As such, it is capable of being breached by either side. (Strzelec Report p. 1-20; Strzelec depo. p. 50).

Plaintiff's insurance policy with Progressive, at page 15, states:

### PART III-UNINSURED/UNINSURED MOTORIST COVERAGE

Insuring Agreement

Subject to the Limits of Liability, if you pay the premium for uninsured/uninsured Motorist Coverage, we will pay for damages, other than punitive or exemplary damages, which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle or uninsured motor vehicle because of bodily injury:

1.      Sustained by an insured person;

2.      Caused by an accident;

3.      Arising out of ownership, maintenance, or use of an uninsured motor vehicle.

In South Dakota, it is mandatory to purchase and maintain auto liability insurance plus mandatory UM/UIM.  See S.D.C.L. § 32-12-et. seq and 58-11-9.4, 58-11-9.5.  Therefore, auto insurance is a profit based product and service, that carries the weight of the enforcement of the government in the event the citizen is caught driving or using a vehicle without insurance.  So it only goes to show that since this private, profit-based product and service is thrust upon the public mandatorily, that public policy would dictate that insurers are also charged with serving

the public interest.  If so, insurers have the obligation under public policy concerns, not to deceive, defraud, mislead, falsely advertise, misrepresent or lie about what it is selling and the practical affect of the same, to the unsuspecting consumer, who trusts the insuer's agent(s) to be fair, reasonable, honest and open about the true and actual affects of its "products" (i.e. UM/UIM coverage).  (See SDCL § 20-10-1, 58-33-35).  This is especially true in light of the insuror's and the insuror's selling, offering and marketing agents' fiduciary duty to its policyholders and insureds.

Progressive is sold independently at times, or through its own internal agents such as by the 1-800 toll free service utilized by Plaintiff here.  Therefore, Progressive and its selling agents are one and the same entity for purposes of this suit.

Courts construe the uninsured and underinsured motorist (UM/UIM) statutes together and apply the case law considering UM and UIM coverage interchangeably.  Gloe v. Iowa Mut. Ins. Co., 694 N.W. 2d 238 (S.D. 2005).

If insurers like Defendant are allowed to continue to prey on innocent consumers such as Brooke Lebeau, because of the unclear distinction in practice, where a first party UM insurer can knowingly deceive its own insured by failing to reasonably or fairly disclose the fact that first party UM Bodily Injury policy benefits are available (and should be paid) to cover unpaid/unreimbursed accident related medical expenses and/or lost wages incurred by its own insureds, or if insurers are allowed to punish/harm their own first party insureds by unreasonably and unfairly withholding those needed party UM BI benefits from its own insureds (even as to an "undisputed amount" of those UM BI benefits), what can be done to challenge the practice?  Progressive Northern, and those insurers in South Dakota like them, will continue to take

12

advantage of the system until someone or something stops them.

If you look at the potential of collecting up to $20.00 to $40.00 per year from each and every policyholder on UM coverage 25/50 limit polices, with lower claims paid, over at least 20 to 30 years, you are looking at quite a bit of unpaid claim dollar money that Defendant pockets, knowing the unprotected harm that can, will and does happen to people because of these unfair claims handling practices.  Brooke Lebeau is a case in point.

### Breach of Contract

Breach of contract and deceit has been alleged by Plaintiff for Defendant's known, wilful and institutionalized decisions and motives to sell, market, deliver and profit from premiums collected for auto policies having UM BI at a $25,000 per person per accident limits.  If deceit or fraud is proven at the hands of the Defendant by pointing out its sales and nondisclosure tactics, that in and of itself is a breach of contract.  See Roper v. Noel, 143 N.W. 130 (S.D. 1913); Klaveness v. Freese, 145 N.W. 561 (S.D. 1914).  Punitive damages are also available against an insurer.  See Biegler v. American Family Ins. Co., 621 N.W.2d 592 (S.D. 2001).

In SDCL §20-10-1, the South Dakota legislature states:

> Liability for damage caused by deceit. One who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers.

In Plaintiff's case she does have evidence indicating the fact that Defendant's management and agents have had prior and present knowledge how UM polices in South Dakota are marketed and sold.  A first party UM insurer can knowingly deceive its own insured by failing to reasonably or fairly disclose the fact that first party UM Bodily Injury policy benefits are available (and should be paid) to cover unpaid/unreimbursed accident related medical

13

expenses incurred by its own insureds, or if insurers are allowed to punish/harm their own first party insureds by unreasonably and unfairly withholding those needed first party UM BI benefits from its own insureds (even as to an "undisputed amount" of those UM BI benefits), that practice can result in damage and harm to consumers, such as Brooke Lebeau here.

Defendant has also failed to have Plaintiff's medical bodily injury claim for UM benefits, reviewed or evaluated by an independent medical review expert, according to Rule 35. (**Ex. 13**, RFA#27, Rear Dep. 93-100). Instead Defendant has chosen to use its institutionalized non-human bodily injury claim scrutiny under COA (Claims Outcome Advisor), and to challenge the basis of Plaintiff's UM BI claimed damages under the MIST (minimal impact, soft tissue) theory. (Rear Dep. 25-35, 78-84, **Ex. 5**).

Defendant's adjustor Rear had no knowledge of the types or elements of bodily injury damages that Progressive must consider and pay to its insured, such as Plaintiff here, if those damages are caused by a covered UM event (i.e. pain and suffering, loss of enjoyment of life, "eggshell Plaintiff", etc.). (Rear Dep. 33-60, 90-91; Strzelec report p. 1-20; Strzelec Dep. 47-61). Also adjustor Hupp deceived Plaintiff on the issue of lost wages and did not include them(Rear Dep. 90-3, Strzelec Dep. 60-69). Adjustor Kurle further deceived Plaintiff to allow her to believe that UM BI coverage would not or may not cover or be used to pay her medical expenses. (Kurle Dep. 23-45, Strzelec Dep. 50-59).

It is a pattern of Progressive in South Dakota and across the country, to teach and direct its claims personnel (adjustors, claims managers, claims attorneys, defense attorneys), to demand and obtain a written "release" before or unless any type of claim payment on first party claims is made, such as Plaintiff's UM claim here. Progressive claims personnel in other first party

litigation actions brought by their own insureds against Progressive, have testified as to this directive and "policy" of Progressive-to demand and obtain a signed written "release" from all claimants, even on first party UM claims.   (Rear Dep. 60-108; Strzelec report, **Ex. 1**, p. 1-20.

Under the summary judgment standard, Plaintiff's evidence is to be taken as if true and in the best light toward Plaintiff.  Here it is obvious that Plaintiff was naive and a first timer at the time of the September 18, 2009 UM bodily injury claim (Lebeau Dep. 38-44, Rear Dep. 42-45). It is clear she had no experience with UM or MPC prior to September 18, 2009.  It is also clear that she knew she had to carry at least 25/50 in BI policy limits, and that they also had to carry UIM and UM.

Plaintiff knew that she was being charged for, and they did pay for, a separate and distinct premium for UM.  What Plaintiff did not understand was how it operated-was there a setoff against the UM limits, or not, for unreimbursed/unpaid medical expenses?  Was there a need to carry more UM per person per accident bodily injury limits over and above the "minimum" (25/50)?  Was it fair for an insurer to not disclose any first party coverages to an insured?  She did not know the questions to ask Progressive Northern, and was relying upon the trust they placed in the fiduciary - like duty relationship placed on Progressive Northern as their insurance company, not to mislead, misrepresent or deceive her on material matters such as her own personal protection and peace of mind.  (Lebeau depo. p. 65-85).  Defendant's adjustor did not even know what a fiduciary was.  Plaintiff relied upon Defendant and its sales agents and/or claims personnel not to unfairly conceal or misrepresent the true nature of the UM policy.

### Unfair Trade Practices

Plaintiff has alleged that Defendant's purposeful conduct in selling, marketing and

delivering auto polices with UM/BI coverage, while failing to disclose that UM BI will not be offered or paid out when needed to cover unreimbursed/unpaid medical expenses, or UM BI will be withheld even when an undisputed amount is determined to Progressive, is fraud, deceit, and a breach of contract.  Plaintiff has further alleged that this intentional decision and practice by Defendant to continue to do so in the face of knowing how the practice can, will and actually does harm consumers such as Brooke Lebeau here, is also a violation of the Unfair Claims Practices Act under SDCL § 58-33-67(7), which reads:

> Unless permitted by law and the insurance policy, refusing to settle a claim of an insured or claimant on the basis that the responsibility should be assumed by others.

By refusing to change its intentional sales motives and claim handling practices, which lead to collecting premium dollars from unsuspecting consumers such as Brooke Lebeau, Defendant is one of several known auto insurers (others being Alpha Property, Unitrin, Desmet Mutual, etc.), that sell UM/UIM at 25/50 limits in South Dakota.  These companies are knowingly taking advantage of innocent and needful consumers, including Brooke Lebeau, by taking these UM/BI premiums ($8.00 to $30.00 per year), and pocketing this money so that they can withhold those benefits from their insureds in UM BI claims, and not honestly, reasonably or fairly disclose to the insureds that UM BI will or should pay out to cover unreimbursed/unpaid medical expenses without a formal and permanent UM BI written release being signed in exchange for those payments of UM BI benefits.  This is true if these companies, like Progressive Northern, intentionally chose not to disclose the withholding of payment of these benefits.  This is why these companies such as Defendant here, will not agree to willingly change their practice of nondisclosure of the danger and harm that can be caused to the South Dakota policyholder

16

(such as Brooke Lebeau) if and when a significant uninsured loss occurs, and the UM BI coverage, which they paid for, is not there.

According to SDCL §58-33-35, an insurer is not supposed to do this.  SDCL §58-33-35 reads as follows:

> Collection of premium for insurance not provided as misdemeanor. No person shall willfully collect any sum as premium or charge for insurance, which insurance is not then provided or is not in due course to be provided, subject to acceptance of the risk by the insurer, by an insurance policy issued by an insurer as authorized by this title. Violation of this section is a Class 2 misdemeanor.

Plaintiff, and those previously and yet to be harmed consumers, need to be able to have a legal remedy to counter Defendant's purposeful money making scheme.  However, because of the litigation at hand the consuming public may have to rely upon its own devices to establish firm legal remedies and theories based upon the statutory and common law.  UM and UIM are required by South Dakota law.  Auto insurance is required.  Why shouldn't an insuror taking advantage of this captive market of a huge amount of consumers, be required to play by the rules.

Plaintiff sought protection of her assets and for peace of mind and to pay for what she needed to be covered for (Lebeau depo. p. 70-85).  Plaintiff was very naive when they purchased the Progressive Northern policy and the 25/50 UM, before September 18, 2009. (Lebeau depo. p. 68-75).  She never had a BI claim before, and certainly never a UM nor a MPC claim before.  She trusted that they were paying for something that they needed, and that it would be there at her time of need if it came to be.  She trusted Progressive's agents to treat her interests with equal consideration to Progressive's own interests, and not have Progressive elevate its own financial interest over that of its own insured.  (Lebeau depo. p. 65-85; Strzelec **Ex. 1**, p. 1-20; Strzelec depo. p. 85-95).

17

In Hawkins v. Allstate Insurance Co., 733 P.2d 1073 (Ariz. 1987), the court upheld a jury verdict of $3.5 million in punitive damages based upon the bad faith conduct of the insured where the insurer was deducting, on every claim, a "cleaning fee" of $35.00, but was doing so on every policy and claim of the same nature.  Fiduciary transactions are governed by different rules. The first rule is that a company will give at least equal consideration to the interests of the claimant.  See Kunkel v. United Security Ins. Co. of New Jersey, 168 N.W. 2d 723 (S.D. 1969). South Dakota recognizes unfair or deceptive trade practices in dealing with insured.  See S.D.C.L. § 58-33-67 (1), (3) and (4).  Plaintiff was a victim of Progressive's violations of their fiduciary duties and the state standards.  The rules are set in place to avoid consumers being taken by intentional deceitful practices of insurers.  (See SDCL § 58-33-35 and SDCL § 58-33-67(7).  Defendant's own claims representative testified under oath that she was aware of the South Dakota Unfair Claims Practices Act (See Rear depo. p. 93-100).

In Torres v. Travelers Civ. 01-5056-KES , the South Dakota District Court oversaw a case and trial where invisible motives, geared toward "savings" or enhancing profit, of the insuror, floated beneath the outward surface of what was exposed to the public.  By taking this action against this insuror, Plaintiff have standing to challenge Progressive's long standing use, plan and/or scheme, to use its practice where a first party UM insurer can knowingly deceive its own insured by failing to reasonably or fairly disclose the fact that first party UM Bodily Injury policy benefits are available (and should be paid) to cover unpaid/unreimbursed accident related medical expenses incurred by its own insureds, or if insurers are allowed to punish/harm their own first party insureds by unreasonably and unfairly withholding those needed first party UM BI benefits from its own insureds (even as to an "undisputed amount" of those UM BI benefits).

18

This practice was designed to allow Progressive to allegedly receive "more investment power" and "Gainshare" profit through incentives to keep "claim severity" low, while placing the consumers/policyholders at extreme risk of serious harm all the time while Progressive and its agents know of the wrongfulness of doing business this way, at the expense of insureds' well being and best interests.

Plaintiff only wants to be able to reasonably disclose the real facts, and the truth behind these motives, these plans, these programs, and to force the issue into the light of day.

## COA

It is alleged that Progressive uses COA (Claims Outcome Advisor) as a claim evaluation tool, even on first party claims.  (**Ex. 5**).

In this claim, the UM BI claim of Brooke Lebeau, was not even evaluated by a medical doctor or independent medical reviewer.  (See Preliminary Disclosure of Stephen L. Strzelec, **Ex. 1**, p. 1-20).   The claims handlers Lori Rear and others, are all Gainsharing participants.  (**Ex. 13**, Rear depo. p. 50-59)  It appears obvious when one learns of Gainsharing and the fact that all full time Progressive Northern employees must participate in Gainsharing that this could impair the agents' independent judgment (**Ex. 1**, p. 1-20; Strzelec depo. p. 77-97)

It makes sense that if "loss severity" is a component of the Gainsharing formula, and polices are sold and premiums collected for UM BI 25/50 limits policies in South Dakota which Progressive designs to only pay "lowball" first party claim payments on, that the loss severity component will be enhanced (i.e. reduced payout) if the company and its agents continue in these types of practices.  (See Strzelec report p. 1-20).

Progressive has been sued for bad faith across the country and in South Dakota for its use

of COA on first party claims.  (**Ex. 4**, 32-48, 57-64, 69-76, 85-94).  They now deny that they use

COA in first party claims in South Dakota since the Hensley litigation, nationwide.  But, this

does not explain its inability to prove that it does not continue to use COA on its first party

claims, despite the fact the references in their SOP's are still there.  (**Ex. 4, 5**).

### Gainsharing

Progressive has been sued for bad faith across the country and in South Dakota for its use

of Gainsharing as an employee incentive compensation program that its claim personnel

participate in.  (PSF 38-47).  The idea is that the use of such incentive pay programs creates a

conflict of interest for the employees.  (**Ex. 3, 6, 7, 8**).  Do they serve their management and

corporate goals for lower loss severity and increased profits, or do they seek out and honor the

best interests, including the financial interests, of their own policy holders?  See "Gainsharing"

by Belcher, Strzelec depo. p. 77-98).

Genuine issues of material facts on these issues are in dispute, and need to be determined

by a trier of fact.

### MPC

Medical Payments Coverage is a supplemental auto coverage that is available for a

policyholder in South Dakota.  See SDCL § 58-23-8.  Plaintiff now admits to Defendant's

Statement of Material Facts #25, only because at the time she started fighting with Progressive to

pay the UM claim, Plaintiff was not fully aware if there was a plausible argument to be made that

Progressive did not legally offer MPC to the Progressive insured at the point of sale.  Only after

discovery was started, was it discerned that MPC did not exist.

### BAD FAITH

20

If it can be proven that Defendant breached its contract with Plaintiff, and/or if it failed to adequately protect Plaintiff's financial and personal interests as promised, and/or if it can be shown that Defendant acted in deceit, fraud or misrepresentation at the point of sale, as to these unfair and unreasonable claim handling practices, bad faith is committed.

## SUMMARY JUDGMENT IS PRECLUDED BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST AND DEFENDANT IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW.

### 1.     Plaintiff Has Established a Substantive Bad Faith Insurance Claim.

In this section, the Plaintiff will provide evidence which establish Defendants' bad faith in the pending action. The Plaintiff will also refute the Defendant's allegations that the elements of bad faith have not been established in this case. In Stene v. State Farm Auto. Ins. Co., 583 N.W. 2d 399, 403 (S.D. 1998) and other state Supreme Court decisions, the Court has specified the elements necessary to prove a bad faith insurance action:

> [F]or proof of bad faith, there must be an absence of a reasonable basis for denial of policy benefits [or failure to comply with a duty under the insurance contract] and the knowledge or reckless disregard [of the lack] of a reasonable basis for denial, implicit in that test is our conclusion that the knowledge of the lack of a reasonable basis maybe inferred and imputed to an insurance company where there is reckless disregard of a lack of a reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured.

(alterations in original), quoting Walz v. Fireman's Fund Ins. Co. 556 N.W. 2d at 70. Furthermore, "the issue is determined based upon the facts and law available to Insurer at the time it made the decision to deny coverage." Walz v. Fireman's Fund Ins. Co.,  556 N.W. 2d at 70, citing Isaac v. State Farm Mut. Ins. Co., 552 N.W. 2d at 758.

In the two-prong bad faith test, applied by the state Supreme Court, the first element that

the insured must prove is that there was an absence of a reasonable basis for denial of policy benefits. The Plaintiff's evidence in this case proves this element.  See Plaintiff's Statement of Material Facts, #4-33.

> **2**.        **There Was no Reasonable Basis for the Defendant to Not Pay the Plaintiff's Claim**.

First, the question of "reasonableness" is almost always a jury question. <u>Walz v. Fireman's Fund Ins. Co.</u>, 556 N.W.2d 68 at 70-71(S.D. 1996). ("Whether the Insurer acted in bad faith in conducting an inadequate investigation or failing to review case law is a question of fact for the jury...").

Second, viewing the evidence in the light most favorable to Plaintiff, as we are bound to do, there is ample evidence to support the Plaintiff's contention of a lack of reasonable basis for the Defendant to deny the Plaintiff's UM BI claim. Defendant claims that Plaintiff's UM/BI claim is fairly debatable.  But in order to be fairly debatable, the Defendant has to honor its good faith duty to actually debate fairly.  Through Progressive's conduct here, it has not.  (See Strzelec report, **Ex. 1**, p. 1-20, Strzelec depo. p. 92-95).

> **3.**        **The Defendant Knew or Recklessly Disregarded the Lack of a Reasonable Basis to Fail to Pay Plaintiff's Claim and Showed Reckless Indifference to Facts and Proofs of Injury.**

The second element of bad faith that must be proved is the Defendant's knowledge or reckless disregard [of the lack] of a reasonable basis for denial. "*Implicit in that test is the conclusion that the knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is reckless disregard of a lack of a reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured*." <u>Champion v.</u>

USF&G, 399 N.W.2d at 324. In other words, to prove this bad faith element, the Plaintiff does not have to prove actual knowledge by the Defendant, instead knowledge may be inferred where there is reckless disregard of a reasonable basis for denial *or a reckless indifference to facts or to proofs submitted by the Plaintiff*.

**4.     The Defendant Acted In Bad Faith When it Failed to Conduct a Good Faith Investigation of the Plaintiff's Claim**.

The Defendant had a duty to conduct a good faith investigation of Plaintiff's claim. In Champion, the South Dakota Supreme Court recognized this principle when defining its bad faith test: "It is appropriate, in applying the test, to determine whether a claim was properly investigated and whether the results of the investigation were subjected to a reasonable evaluation and review." Champion v. United States Fidelity and Guaranty, 399 N.W. 2d. at 323324, quoting Travelers Ins. Co. v. Savio., 706 P.2d. at 1275.

Subsequent South Dakota Supreme Court decisions have upheld bad faith verdicts based on an insurer's failure to conduct a good faith investigation. In Walz v. Fireman's Fund, 556 N.W.2d 68, the Court reversed a summary judgment for the insurer. The Court held that the question of whether the insurer conducted a sufficient investigation raised a genuine issue of material fact. Walz v. Fireman's Fund Ins. Co., 556 N.W.2d at 70-71.  Please refer to the report of Mr. Strzelec for Plaintiff's proof of the breach of the standard of care, and of Defendants' duty of good faith and fair dealing; as well as the previous authority, exhibits and testimony cited herein.  (**Ex. 1**, p. 1-20).

## CONCLUSION

Plaintiff respectfully requests that the Court deny the Defendant's Motion for Partial

Summary Judgment in its entirety, declare certain facts admitted, and to declare judgment on the law in favor of the Plaintiff, or in the alternative, to set the matter for trial on the merits.

Dated this 4th day of August, 2014.

> ABOUREZK & ZEPHIER P.C.
> Attorney for Plaintiff
> Post Office Box 9460
> 2020 West Omaha
> Rapid City, South Dakota 57709
> (605) 342-0097
>
> By:/s/ Robin L. Zephier
>      Robin L. Zephier

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 4th day of August, 2014, he had served, a true and correct copy of the foregoing *Plaintiff's Brief in Support of Plaintiff's Response in Opposition to Defendant's Motion for Partial Summary Judgment* by electronic filing to:

> Mark J. Arndt
> 6805 South Minnesota Avenue, Suite 100
> P.O. Box 88738
> Sioux Falls, SD 57109-8738
> (605) 336-2565; Fax: (605) 336-2604
> marndt@mayjohnson.com
> Attorneys for Defendant

and that the same were provided by postage prepaid, first class mail.

> /s/ Robin L. Zephier
> Robin L. Zephier

24